COBB *vs.* GOODHUE and others.

Where the complainant applied to the several defendants to assist him in testing, by actual experiment, his supposed improvement in generating steam and applying it to the propelling of steamboats, and they agreed to take stock in a fund of $16,500 wherewith to build a steamboat, which was subscribed accordingly; and the complainant subscribed $7500, and the defendants G. & Co. $3,500, which they paid, and the defendants B. & B. subscribed $3000, and agreed to build the boat for the $16,500, but actually expended about $2000 more in extra work upon the boat by the direction of the complainant, who subsequently purchased the interest of B. & B. in the boat; *Held*, that the subscribers to the stock were not liable to the complainant for any thing beyond the several amounts subscribed by them respectively.

And the complainant having caused the boat to be sold at auction, and having bid it in himself for $4000, and afterwards sold it for $14,000; *Held*, that he was bound to account with G. & Co. for their proportionate part of the proceeds of the last sale, after deducting from such proceeds a proportionate share of the extra cost of the boat beyond the $16,500.

*Held further*, that the defendants G. & Co. could not, upon the complainant's bill, obtain a decree against him for their share of the proceeds of the sale of the boat; he having entirely failed in his suit so as not to be entitled to a decree for an account.

THIS case came before the chancellor upon an appeal by the complainant from the whole of the decree of the late assistant vice chancellor of the first circuit; and also upon a cross appeal by the defendants, Goodhue, Perit and Durand, from so much of the decree as declared and adjusted their proportions of the proceeds of the sale of the steamboat Despatch, as between them and the complainant. The facts of the case, according to the conclusions at which the chancellor arrived upon the pleadings and proofs, were substantially as follows: P. Burnet, supposing that he had discovered or invented a new and useful improvement in the manner of generating steam, or in the application thereof to steamboats, transferred his interest in such improvement to a voluntary association, by the name of the Burnet Steam Power Company. And the complainant having great confidence in the value of the improvement, he and the defendant Brewster and H. P. Hardy, entered into a contract with the company to secure to themselves a part of the benefit of the im-

Cobb *v.* Goodhue.

provement when it should be patented; the precise nature and terms of which agreement appear by an exhibit. But, for the purpose of testing the supposed improvement, it became necessary for the complainant and his two associates to build a steamboat into which the improved machinery of Burnet might be placed. For this purpose the complainant applied to the defendants to assist him in the experiment. And in June, 1836, he procured from the defendants Brown & Bell an estimate of the terms upon which the latter would build the steamboat for the reception of Burnet's improved machinery to try the experiment; which was as follows: "Estimate to build a steamboat of the following dimensions, viz. 160 feet on deck, 20 " beam, 11 " deep. To do all the ship carpenter's work, including sponsons to fit her for sea. To have two masts, and other spars, and copper fastened, for the sum of sixteen thousand five hundred dollars, ($16,500.) Payments ¼ when the keel is laid; ¼ when the frame is raised; ¼ when the deck is laid; ¼ in 60 days after she is launched.

We the subscribers have agreed to the above.

New-York, 29 June, 1836.                    BROWN & BELL,
                                            N. COBB."

On the back of this agreement the following sums were after-wards subscribed, in this form:

"Subscribers to the within agreement for St. Boat.
    N. Cobb, five thousand dollars.
    Brown & Bell, three thousand dollars.
    L. Brewster, three thousand dollars.
    Goodhue & Co. twenty-five hundred dollars.
    C. Durand, one thousand dollars.
    N. Cobb, the balance, two thousand dollars."

The boat was built by Brown & Bell, under the direction of the complainant, who paid them the $16,500, after deducting therefrom the $3000 subscribed by them; and Goodhue & Co. and C. Durand paid to the complainant the $2500, and the $1000 subscribed by them. The experiment entirely failed. And in fitting up the boat and making the experiment, the complainant expended

a large sum beyond the $16,500. After the failure of the experiment and about the 1st September, 1838, the complainant caused the boat to be put up at auction, and bid it in himself for $4000, having previously purchased from Bell his interest in the $3000, subscribed by Brown & Bell. The complainant subsequently sold the boat, Burnet's machinery being taken out, to the Georgia Steam Packet Company, for $14,000 ; $9000 of which was paid to him in cash, and the residue was taken by him in the stock of that company. In addition to the $16,500, Brown & Bell made a claim against the complainant for extra work upon the boat, and for wharfage, &c., of about $2250, which the latter refused to pay. And when the complainant afterwards sold the boat to the Georgia Steam Packet Company, Brown refused to give the builder's certificate that the boat was built for the complainant, unless he settled this bill for extra work, and paid Brown for his interest under the subscription of Brown & Bell for $3000 towards the building of the boat. Those parties subsequently, and about the last of October, 1838, compromised, by the complainant's giving to Brown $2700 for the bill of extra labor, and for the $1500 as his half of the subscription of Brown & Bell ; and the certificate was thereupon given that the boat was built for Cobb.

The complainant afterwards filed his bill in this cause, seeking to charge Brown & Bell, and Goodhue & Co., and Durand with a proportionate share of all his expenses incurred in building the boat and in the experiments therewith, beyond the $16,500 ; and claiming that he was duly bound to allow towards such expenditures the $4000, for which he bid in the steamboat when he caused it to be put up and sold at auction. The defendants Goodhue, Perit and Durand, composing the firm of Goodhue & Co., by their answer, denied that they were in any way interested in the profits or losses to be derived from the experiments with the boat, or in the Burnet improvement, or liable for any thing towards the building of the boat, beyond the sums subscribed and paid by them ; and they alleged that these sums were subscribed at the solicitation of, and as an accommodation to, the complainant, to assist him ; and under an expectation that the same would be repaid to them out of the proceeds of the sale of

Cobb *v.* Goodhue.

the boat. And they insisted that the sale of the boat was unauthorized; and they claimed their proportionate share of the amount for which the complainant afterwards sold the same to the Georgia Steam Packet Company, in proportion to the amount of their subscriptions. And Brown & Bell by their answer denied that they were ever liable for the expenditures of the complainant beyond the amount of the $3000 subscribed by them. And they set up the sale of their interest in the boat to the complainant, and the compromise between Brown and the complainant, as a bar to any claim on them, or on either of them, on account of the boat or the expenditures thereon, or on account of the moneys paid by the complainant on such compromise.

The assistant vice chancellor decided that under the compromise of October, 1838, Brown & Bell were not liable to any further payment on account of the expenses of the building of the boat; and that they were not entitled to any part of the proceeds of the sale. He, therefore, decreed that the complainant's bill, as to Brown & Bell, be dismissed with costs. He also decided that Goodhue, Perit and Durand were not liable to account to the complainant for any part of the expenses, costs, and charges incurred or expended by him upon the boat, beyond the $3500 subscribed by them, and which they had paid before the commencement of this suit. But instead of dismissing the bill with costs as to these defendants, he proceeded to adjust their claims against the complainant, and to make a decree in their favor for what he considered their share of the proceeds of the sale of the boat by the complainant. In making such adjustment, however, he decided and decreed that the complainant was only to be charged with the $4000, for which he bid in the boat in September, 1838, and not for the $14,000, for which he sold the boat a few weeks afterwards; and that these defendants were to receive such proportions of the $4000 as their subscriptions towards building the boat bore to the cost of the boat; and that in estimating the cost of the boat, for the purpose of such adjustment, the expenses of additions to the boat of a substantial and permanent nature, beyond the $16,500, should be included.

Cobb *v.* Goodhue.

*J. Anthon,* for the complainant.

*J. R. Whiting,* for Brown & Bell.

*J. Coit,* for Goodhue & Co.

THE CHANCELLOR. The first question for consideration is, whether the decree was erroneous in directing the bill to be dismissed with costs as to the respondents Brown & Bell. And upon that question, I think there is no room to doubt that the compromise of October, 1838, put an end to all claim of the complainant upon either of those defendants for any expenditures for or on account of the boat. Whatever may be the construction of the original agreement, the testimony establishes the fact that the complainant, about the last of October, 1838, purchased whatever interest Brown had, under the subscription of Brown & Bell, or otherwise, in the subject matter of that agreement; and that he had previously purchased the interest of Bell therein. And it is evident that it was the intention of the parties that this compromise should put an end to all claims between them on account of the boat, or of the building thereof; and that the complainant should thereafter be entitled to all the rights of Brown & Bell under any previous arrangements between the parties, whatever those rights were. By the purchase of their interests in the concern he took them *cum onere.* And the payment by him of a portion of their claim for their extra work upon the boat is wholly inconsistent with the idea that either party then supposed that he was afterwards to be entitled to recover back from them a part of the amount thus paid for the extra work and for other expenditures made by him. Again, if there was any debt previously existing against Brown & Bell on account of the building of the boat, &c., it was a partnership debt; as they subscribed the agreement as copartners originally; and a compromise with one of the copartners necessarily discharged the other, although he was not present.

But it is said that Brown refused to give the complainant the requisite certificate, to enable him to enrol the boat in his own

name, unless this compromise was made; and that therefore it ought not to be binding upon him. It is evident, however, from the testimony, excluding that of Brown, that the complainant was not entitled to the certificate in his own name, so as to enable him to sell the boat without the assent of Brown; whether Brown's interest in the boat was a mere lien thereon, for his half of the $3000 subscribed by Brown & Bell, or was the interest of a joint owner. The putting up the vessel at auction, by the auctioneer, under the direction of the complainant, and the purchase by the complainant himself, was a mere nullity as against the other persons who were interested in the boat, if they did not afterwards consent to ratify that sale. (*Hawley* v. *Cramer*, 4 *Cowen's Rep.* 717. *Joy and others* v. *Childs, in the court of errors, Dec. 27th*, 1843.) And there is no evidence in the case to show whether the claim of Brown & Bell, for extra work upon the boat, was or was not a fair claim against the complainant. The whole therefore was a fair subject of compromise between the parties, and Brown was right in refusing to give the certificate until his claim upon the boat, as well as that for the extra labor, was in some way adjusted. It would be a violation of all principle, then, for any court to go back beyond that time for the purpose of settling the rights of the complainant and these two defendants. The part of the decree dismissing the bill with costs as to Brown & Bell, must therefore be affirmed, with their costs, upon the appeal, to be paid by the complainant.

I think the assistant vice chancellor was also right as to the construction of the written subscription of Goodhue & Co., and of Durand, one of the members of that firm, in relation to the building of the boat; when taken in connection with the answer, which is responsive to the bill, and the testimony in the case, so far as either party has been able to obtain any testimony on the subject. Taking all the circumstances into consideration, it is very evident that Durand, who subscribed for himself and for his firm of Goodhue & Co., did it to assist the complainant in his experiment; without any expectation on the part either of the complainant, or of Durand or his copartners, that as between the

complainant and them, they were in any event to be liable for any more than the $3500, which they subscribed and paid. And they were probably willing to risk that sum to aid him in the experiment, without any other security for its repayment than their proportionate share of the proceeds of the boat, without the machinery of Burnet, if the experiment failed. They might also have expected that the complainant would make them some further compensation for their risk, in case his experiment should prove successful. But there does not appear to have been any definite agreement or understanding on that subject.

The assistant vice chancellor having arrived at the conclusion, however, that the complainant was not entitled to the account and relief prayed for in the bill, the whole foundation of the suit failed; and he was not authorized, without the assent of the parties, to proceed and make an adjustment of the claims of the defendants against the complainant, on account of the proceeds of the sale of the vessel, without a cross bill. But he should have dismissed the complainant's bill against Goodhue & Co. and Durand, with costs; and without prejudice to their rights at law, in suits which might be brought by them against the complainant for their respective shares of the proceeds of the sale of the vessel, or in any suits which they might institute in this court to recover their rateable proportions of such proceeds. The principle upon which the court below directed their proportions of the proceeds of the vessel to be estimated, I think, was right as between the parties. For if the complainant had laid out more than the $16,500 upon the boat, in additions of a substantial and permanent nature, those additions would necessarily enhance the value of the boat, upon a sale ; and he might very properly be considered as a subscriber to that additional amount, towards the building of the boat. In an equitable adjustment of the proceeds of the sale, therefore, his proportion of those proceeds should be increased pro tanto.

But as I have before said, in relation to the claim of Brown & Bell, the sale of the boat by the complainant and the purchasing it in himself, for less than one third of its actual value, was a mere nullity, as against Goodhue & Co. and Durand, if they

Cobb *v.* Goodhue.

had any interest in, or lien upon the boat. It is true there is some evidence that Goodhue & Co. assented to a sale. But there is not a particle of testimony to show that either of these defendants intended to consent that the complainant should have the property put up in their absence and bid it in himself; and that such a transaction should be considered a real sale as to them. In the adjustment of their claims, therefore, the amount for which the complainant actually sold the boat on the 10th of October, 1838, and not the nominal sum at which it was struck off to him, forty days before that time, was the proper sum to be apportioned between the parties.

If both parties consent to an adjustment of the amount upon these principles, without the necessity of further litigation, the decree of the assistant vice chancellor, as between the complainant and those defendants, may be modified accordingly; and without costs to either of them as against the other, upon this appeal. But if a stipulation to that effect is not filed within thirty days after pronouncing this decision, this court must make the only decree which it can properly make upon this bill and upon the facts of the case; that is, to affirm so much of the decree of the assistant vice chancellor in relation to the rights of these particular parties as declares or decrees that the defendants Goodhue, Perit and Durand, are not liable to account to the complainant for any part of the expenses, costs and charges incurred and expended by him upon the steamboat Despatch in the bill mentioned, beyond the specified sum of $3500, which sum has been paid by them in full satisfaction and discharge of their subscription; and so much of the decree as awards costs to those defendants; and to reverse the residue of the decree which adjusts the claims of these defendants for their proportions or shares of the proceeds of the sale of the boat, and dismiss the complainant's bill as against Goodhue, Perit and Durand, without prejudice to their rights to proceed either at law or in equity, as they may be advised, for their proportionate shares of the proceeds of the sale of the boat.(*a*)

(*a*) Affirmed on appeal to the court for the correction of errors, August 26, 1845.